IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT & WILDEARTH GUARDIANS;<br><br>               Plaintiffs,<br><br>   v.<br><br>BUREAU OF LAND MANAGEMENT, and U.S. DEPARTMENT OF THE INTERIOR;<br><br>              Defendants. | Case No. CV 09-482-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are cross motions for summary judgment. (Docket Nos. 7, 14.)  Having thoroughly reviewed the record and the briefing submitted by the parties as well as hearing oral argument on the motions, the Court issues the following Order.

## FACTS

On August 16, 2007, Plaintiffs Western Watersheds Project and WildEarth Guardians filed a Freedom of Information Act ("FOIA") request with the Bureau of Land Management ("BLM") seeking basic information regarding BLM's ongoing management of livestock grazing on public lands. (Docket No. 11-3.)  In their requests, Plaintiffs sought information concerning:

Any and all records maintained by the BLM through its Rangeland

Administration System (RAS) or otherwise within the agency's control - that tends to show the identify of all individuals and/or entities currently holding BLM grazing permits for each and every livestock grazing allotment within the BLM system of lands. These records should include, but are not limited to:

     a. Each permittee's name;
     b. Each permittee's postal and electronic mailing address;
     c. Each permittee's telephone number;
     d. Each permittee's associated allotment name and number; and
     e. The length of time each permittee has held such grazing privilege on  BLM Lands.[1]

On September 20, 2007, the BLM sent Plaintiffs a letter indicating that their FOIA request was placed on a complex track and would require more time to respond to the requests because clarification was needed. (Docket No. 11-3.)   Further, the letter provided that the responses could be provided once BLM made appropriate modifications to its existing database - the Rangeland Administration System ("RAS").  On October 2, 2008, the Plaintiffs sent a letter clarifying their requests. (Docket No. 11-3.)  In a letter dated May 13, 2008, the BLM refused to disclose certain unspecified portions of the information requested, claiming that it was protected from disclosure under Exemption 6 of the FOIA.  (Docket No. 11-3.)  This letter also directed Plaintiffs to the RAS website which allows public access to a menu of available reports for all BLM allotments/permits.[2]  (Cooley Decl., Docket No. 11-4.)  On September 9, 2008, the Plaintiffs appealed BLM's use of 5 U.S.C. §552(b)(6) or Exemption 6, to withhold

---

[1] Plaintiffs also sought two other types of information under the FOIA but those requests are not at issue in this case.

[2] A detailed discussion of the types of reports available is included in the Declaration of Philip Cooley.  (Docket No. 11-4.)

information. The Department of Interior denied the Plaintiff's appeal on September 30, 2008, in a letter which included as an attachment a letter that denied an almost identical FOIA request by Forest Guardians (know as "WildEarth Guardians") in 2005.

The 2005 letter explained that the information withheld was withheld in accordance with BLM's internal policies. BLM's division of the grazing permittees into the three categories identified below determines what information the BLM releases in response to an FOIA request.

Category 1 includes all permittees whose names, designations and/or identifiers indicate clearly that they are formally organized and operating as a business. For this category of permittees, the BLM has determined that permittees have no privacy interest in their contact information and that all contact information can be released.

Category 2a permittees includes entities listed under a personal name along with the words "Ranch" or "Farm" plus some additional legal designation such as Inc., Corp., Co., or LLP. The BLM has determined that these entities are usually closely held or family owned businesses and retain a reduced privacy interest in their contact information. Therefore, the BLM releases the permittee's name, operator number or authorization number, city, state and five digit zip code. The permittee's street/mailing address and telephone number are withheld.

Finally, Category 2b includes permittees holding a permit under a personal name or in the individual's name plus the word "Ranch" or "Farm" without a public designator. The BLM has determined that these permittees have the highest interest in their privacy

and, as a result, only the operator or authorization number, city, state and five digit zip code are released by the BLM.  The permittee's name as well as street/mailing addresses and telephone number are withheld.  (Cooley Declaration ¶ 11, Docket No. 11-4.)

Plaintiffs Western Watersheds Project and WildEarth Guardians ("Plaintiffs") filed this action against the BLM and the Department of the Interior  ("Defendants") on September 24, 2009. (Complaint, Docket No. 1.)  The Complaint alleges that Defendants violated the Freedom of Information Act ("FOIA") by not fully responding to their requests for information regarding grazing permits and permittees authorized to graze livestock on federal public lands.  Defendants filed an Answer to the Complaint on October 30, 2009. (Docket No. 4.) On October 27, 2009, the BLM through the U.S. Attorney's Office, provided Plaintiffs' counsel with a disk containing all of the information requested except for the information described above related to the Category 2a and 2b permittees.   Soon after, Plaintiffs filed their Motion for Summary Judgment (Docket No. 7) on their FOIA claim.  Defendants responded to Plaintiffs' motion and filed a Motion for Summary Judgment of their own. (Docket No. 11.)[3]  After several extensions of time requested for briefing by both parties, the motions are fully briefed and pending before the Court.

---

[3] The Complaint also alleges a violation of the Administrative Procedure Act ("APA") that is based on the same facts as the FOIA claim.  Plaintiffs did not move for summary judgment on the APA claim.  Defendants moved for summary judgment on both claims.

# DISCUSSION

## 1. Summary Judgment Standard

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which provides, in pertinent part, that judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  Under Rule 56, summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the nonmoving party will bear the burden of proof at trial.  *See Celotex Corp v. Catrett* 477 U.S. 317, 322 (1986).  If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 323.[4]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine."  An issue is "material" if it affects the outcome of the litigation.  An issue, before it may be considered "genuine,"

---

[4]  *See also* Fed. R. Civ. P. 56(e)(2), which provides, in part:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial.

must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent* 523 F.2d 461, 464 (1st Cir. 1975) *quoting First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989). When applying this standard, the court must view all of the evidence in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992). Freedom of Information Act ("FOIA") claims, such as this one, are typically decided on summary judgment. *Lane v. Dep't of Interior*, 523 F.3d 128, 1134 (9th Cir. 2008).[5]

## 2. Freedom of Information Act

The Freedom of Information Act ("FOIA") was enacted to facilitate public access to government records. *Forest Service Employees for Environmental Ethics v. United States Forest Service*, 524 F.3d 1021 (9th Cir. 2008) *citing John Doe Agency v. John Doe Corp*. 493 U.S. 146, 151 (1989). The statute's purpose is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Id. Citing Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). Therefore, the FOIA requires every federal entity to make requested records "promptly available to any

---

[5] "The standards upon which the court evaluates the cross motions for summary judgment do not change simply because the parties present cross-motions."*J&J Sports Productions, Inc. V. Phelan*, 2009 WL 3748107 (E.D. Cal. 2009) *quoting Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991.)

person." *Id. Citing* 5 U.S.C.§ 552(a)(3)(A). This requirement does not apply if the information requested falls into one of nine exemptions included in the FOIA. 5 U.S.C. §552(b). The burden is upon the government agency to establish that a given document is exempt from disclosure.[6] *Van Bourg, Allen, Weiberg, & Roger v. National Labor Relations Board*, 728 F.2d 1270, 1272 (9th Cir. 1984).

In this case, Defendants contend that 5 U.S.C. §552(b)(6) or Exemption 6, applies to some of the information requested by Plaintiffs. However, prior to addressing Defendants' assertion that Exemption 6 supported their withholding of certain information, the Court will first address Plaintiffs' argument that the Court should not consider all of Defendants' arguments in their Response to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Motion for Summary Judgment. (Docket No. 11-1.)

**A. BLM's new arguments**

First, the Court will discuss Plaintiffs' argument that the Court should consider only the reasons relied upon by the BLM in their denial letter[7] when addressing the

---

[6] This standard remains the same where, as here, the question comes before the court on cross motions for summary judgment. *See Fort Hall Landowners Alliance v. Bureau of Indian Affairs, et al.* Case No. CIV 99-52-E-BLW, Memorandum Decision and Order (Docket No. 135) (D. Idaho, March 17, 2000) *citing Maricopa Audubon Society v. U.S. Forest Service*, 108 F.3d 1082, 1085 (9 th Cir. 1997).

[7] Plaintiffs identified a letter sent by Darrell R. Strayhorn, FOIA & Privacy Act Appeals Officer at the Department of the Interior, to Mark Salvo of WildEarth Guardians dated September 30, 2008, as the "denial letter" that Plaintiffs contend Defendants must base their position on. This letter denied the Plaintiffs' request pursuant to Exemption 6 and attached a July 12, 2005 letter response that the Department issued on a prior appeal by the WildEarth Guardians (formerly known as the Forest Guardians) after denying a

applicability of Exemption 6 to the case at hand.  Plaintiffs argue that the Court's review

is limited to the record before the agency,[8] contending that only the reasons listed in the

BLM's denial letter may be used to oppose the Plaintiffs' motion for summary judgment

and to support the Defendants' cross motion.  Specifically, Plaintiffs contend that the

Court should not consider BLM's argument that, because the withheld information relates

to "individuals, family-owned business and closely held entities," Exemption 6 applies.

Instead, Plaintiffs argue that the Court should consider only the sole basis Plaintiffs claim

was asserted by Defendants for invoking Exemption 6, that the permittees were not

commercial operators and "they could easily be grazing for personal and subsistence

use." (Plaintiff's Reply/Response, p. 4-5, Docket No. 17 *citing Oregon Natural Desert

Association v. United States Dept of Interior ("ONDA")*, 24 F.Supp. 2d 1088, 1091) (D.

Or. 1988).

Defendants respond that they consistently have maintained that the names,

addresses, and other contact information for the individual permittees are exempt from

disclosure under Exemption 6.  Second, Defendants contend that Ninth Circuit case law

does not limit  judicial review to the justification for withholding documents that was

originally relied upon by the agency. (Defendant's Reply p. 5, Docket No. 25.)  In support

---

previous FOIA request that sought the same information. (Answer Exh. D, Docket No. 4-4.)

[8] However, the statute cited by Plaintiffs, 5 U.S.C. §552 (a)(4)(A)(vii), as well as both *ONDA* and District Judge Winmill's 1997 decision specifically restrict review of the record only in the context of fee waivers.

of their argument, Defendants cite *Young v. CIA* which held that "an agency does not waive FOIA exemptions by not raising them during the administrative process...." 972 F.2d 536, 538-9 (4th Cir. 1992) *citing Dublin v. Dep't of the Treasury*, 555 F.Supp. 408, 412 (N.D. Ga. 1981) aff'd 697 F.2d 1093 (11th Cir. 1983). In light of this holding allowing an agency to belatedly claim a new FOIA exemption, Defendants argue that Plaintiffs "cannot logically maintain that an agency should be barred from clarifying, enlarging or expanding upon the rationale that was previously offered in support of its decision to withhold documents." (Defendants Reply p. 5, Docket No. 25.)

Despite Plaintiffs' arguments, the Court finds that the Defendants' letter denying the appeal (Answer Exh. D, Docket No. 4-4) sufficiently contains the arguments relied upon by Defendants in their cross motion for summary judgment. The 2005 letter attached to the 2008 letter from Darrel R. Strayhorn to Plaintiffs identifies issues virtually identical to those Plaintiffs are raising in this lawsuit, including the BLM's "decision to withhold pursuant to FOIA exemption (6), the names and contact information (i.e. street or P.O. Box addresses, telephone numbers, and four -digit zip codes) of federal grazing permit holders ("permittees") who are identified in the Rangeland Administration System ("RAS") only by the name of an individual" and the BLM's decision to withhold "the contact information of permittees who are identified in the RAS as closely held corporations and family owned business operators, i.e. permittees who are identified by an individual's name with a public designation (such as "Inc.," "LLC," or "Co.") or whose names include the term "Ranch" or "Farm" and are self-identified on their grazing

applications as "corporations" or "groups." (Answer Exh. D at p. 3, Docket No. 4-4.)

The 2005 letter explains how the Defendants believe that Exemption 6 covers the information listed above for both individuals and closely held corporations or family owned businesses. Therefore, the Court finds that, even if the Court should review only what was included in the denial letter by the Defendants, here the denial letter includes the argument that family owned and closely held businesses have a privacy interest in their addresses that protects that information from disclosure under Exemption 6.

**B. Application of Exemption 6**

Defendants argue that Exemption 6 applies to the information withheld from Plaintiffs' FOIA request, including the names and addresses of individuals who possess grazing permits (category 2b) as well as the addresses of closely held entities or family owned businesses who possess grazing permits (category 2a).

Exemption 6 provides that government entities may withhold information from "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id*. The term "similar files" has been interpreted broadly, *U.S. Dep't of State v. Washington Post. Co.,* 456 U.S. 595, 600 (1982), to include "government records containing information that applies to particular individuals." *Van Bourg, Allen, Weinerg & Roger v. NLRB*, 728 F2d 1270, 1273 (9th Cir. 1984). If the requested information meets the similar files requirement, the court must next consider whether disclosure of the requested information constitutes a "clearly unwarranted" invasion of the individual's personal privacy. 5 U.S.C. §552(b)(6). To do

so, the court must "balance the public interest in disclosure against the interest Congress intended the exemption to protect." *United States Dep't of Defense v. Federal Labor Relations Authority*, 510 US 487, 489 (1994). The requirement of a "clearly unwarranted" invasion of privacy "instructs [courts] to tilt the balance of disclosure interests against privacy interests in favor of disclosure." *United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus., Local 598 v. Dep't of the Army, Corps of Eng'rs*, 841 F.2d 1459, 1464 (9th Cir. 1988).

### 1. Similar files requirement

To determine whether Exemption 6 applies, the Court first must decide whether the information requested falls under the broadly construed "similar files" requirement in 5 U.S.C. §552(b)(6). Although this requirement is broadly construed, it does not protect privacy interests of business or commercial enterprises. *Multi Ag Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1228 (D.C. Cir. 2008) ("It is clear businesses themselves do not have protected privacy interests under Exemption 6.") However, "government records containing information that applies to particular *individuals* satisfy the threshold test of Exemption 6." *Bourg, Allen, Weinberg & Roger v. NLRB*, 728 F.2d 1270, 1273 (9th Cir. 1984) (emphasis added). Lists of names and addresses meet this definition. *Id.* at 1272.

Plaintiffs contend that Defendants have not demonstrated that the name and address information withheld for individual permittees meets the "similar files" requirement, because Plaintiffs are seeking only the names and business mailing

addresses for grazing permittees whose defining characteristic is that they are licensed to maintain a livestock operation on public lands, which Plaintiffs claim is not personal information. [9] (Plaintiffs' Opening Brief p. 7, Docket No. 7-2.)[10]   Further, Plaintiffs argue that Defendants failed to meet their burden of proving that the "requested records fall squarely within one of the nine statutory exemptions" because they did not offer any evidence that any of the addresses withheld are private home addresses. *Washington Post Co*., 943 F.Supp. at 33.[11]  In support of their argument, Plaintiffs refer to withheld information relating to five (5) authorization numbers for individual permittees that Plaintiffs contend are too large to be farms operating for personal or subsistence use. (Plaintiffs' Opening Brief p. 9-10, Docket No. 7-2.) Defendants respond that the records at issue do contain home addresses or could lead to the discovery of personal information for individual permittees.

### a. Category 2b permittees

---

[9] Despite this contention, Plaintiffs' FOIA requests "[a]ny and all records maintained by the BLM through its Rangeland Administration System (RAS) or otherwise within the agency's control - that tends to show the identify of all *individuals and/or entities* currently holding BLM grazing permits for each and every livestock grazing allotment within the BLM system of lands."  (emphasis added)

[10] During oral argument, Plaintiffs also argued that they are not seeking any of the information related to permits issued and authorized under 43 C.F.R. §4130.5 which authorizes free or subsistence grazing use for individuals.

[11] Plaintiffs argued in their original brief that Defendants have not demonstrated that the withheld information relates to those permittees who are grazing livestock only for "personal or subsistence" purposes.  (Plaintiffs' Opening Brief p. 9, Docket No. 7-2.)  However, during oral argument, Defendants dropped this argument as a basis for application of Exemption 6. Therefore, the Court will not address it further.

First, with respect to those permittees whose names and addresses were withheld because they fell into category 2b, Defendants clarified at oral argument that each of these permittees selected the box on the grazing permit application identifying themselves as a United States citizen as opposed to a group, association, or corporation authorized to conduct business. (Cooley Decl. Exh. 5, Docket No. 11-4.)  Defendants argue that this self identification as a United States citizen is a clear indication that the address provided on the grazing permit application is a home address and subject to Exemption 6.   Further, Defendants contend that this self identification must be given "substantial weight." (Defendants Reply p. 8, Docket No. 25 *citing Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992)). Based on the foregoing, the Court agrees that Defendants' assumption that the address information provided by permittees in category 2b contains "information that applies to particular individuals" is a reasonable assumption. Therefore, Defendants have satisfied the threshold test for application of Exemption 6 to the name and address information in records regarding the individual permittees in category 2b.

### b. Category 2a permittees

Defendants also argue that entities listed in the RAS system under a personal name along with the words "Ranch" or "Farm" plus some other legal designation such as Inc., Corp, Co. or LLP (category 2a), typically are family owned or closely-held and generally operate out of the named individual's home.  Defendants contend these permittees also are entitled to protection of their home addresses from disclosure under

Exemption 6.[12]  (Defendants Response p. 10, Docket No. 11-1.)  Defendants argue that

courts have recognized a privacy interest in family owned or closely held business

information where the information can be readily associated with a particular individual.

*See Campaign for Family Farms v. Glickman*, 200 F.3d 1180 (8th Cir. 2000).  Although

the facts of the *Glickman* case are distinguishable, the Eighth Circuit held that "an overly

technical distinction between individuals acting in a purely private capacity and those

acting in an entrepreneurial capacity fails to serve the exemption's purpose of protecting

the privacy of individuals."  *Id.*; *see also* BURT A. BRAVERMAN & FRANCES J.

CHETWYND, *Information Law* §10-4.13 (1985) ("[I]nformation about closely held

corporations or sole proprietorships may be protected if the information can be identified

as applying to a particular individual.").

In support of their argument that Exemption 6 should not apply to the addresses of

family owned or closely held entities, Plaintiffs rely heavily on decisions rendered in

*Oregon Natural Desert Association v. United States Dep't of Interior*, 24 F.Supp. 2d 1088

(D. Or. 1988) and *Washington Post Co. v. U.S. Dep't of Agriculture*, 943 F.Supp. 31

(D.C. 1991).  However, in both of these cases, the courts balanced any minimal privacy

interest against the public interest under Exemption 6.  Therefore, as explained below, the

Court does not find persuasive Plaintiffs' argument that these cases preclude the

application of the balancing test in this situation.

---

[12] Defendants do not contest the conclusion that corporations or business entities have no
privacy interests in their addresses and other contact information.

In *ONDA*, the plaintiff sought names of individuals who trespassed with cattle onto a land allotment.  The District of Oregon concluded, after applying the balancing test, that the balance weighed in favor of disclosure of the names because the individuals had admitted to violating the law, the plaintiffs had no other way to access the requested information, and the public needed the information to determine how the government was enforcing and punishing the violation of land management laws.  *ONDA*, 24 F. Supp. 2d 1088.

In *Washington Post*, the plaintiff requested the names, addresses and amounts paid to individuals and business entities that received cotton subsidies.  The court found that the cotton farmers had a minimal privacy interest in the requested information because it was generic and revealed no damaging or sensitive information about the individuals receiving subsidies.  The court weighed this minimal privacy interest against the substantial public interest in shedding light on allegations of fraud and conflicts of interest that were supported by government reports and investigation, concluding that the information should be disclosed. *Washington Post*, 943 F.Supp. At 37.

Further, the court in *Multi Ag Media* held:

> ...where business records reveal financial information easily traceable to an individual, disclosing those records jeopardizes a personal privacy interest that Exemption 6 protects. We thus hold that Exemption 6 applies to financial information in business records when the business is individually owned or closely held, and 'the records would necessarily reveal at least a portion of the owner's personal finances.' 515 F.3d at 1228-1229 *quoting Kleppe*, 547 F.2d at 685.

Defendants contend that the address information requested here by Plaintiffs regarding closely held entities, combined with other publicly available information including herd size and Animal Unit Months ("AUM"), could directly or inferentially[13] reveal at least a portion of the owner's of the closely held or family owned businesses personal finances. (Defendants Response p. 13-14, Docket No. 11-1.) The Court agrees that disclosure of the requested address information relating to the family owned or closely held businesses could result in disclosure of individual home addresses, and also might result in inferences being made regarding the named individual's financial position. Therefore, the Court concludes that the requested information does meet the similar files requirement of Exemption 6, particularly in light of the United States Supreme Court's broad application of the "similar files" requirement to "those kinds of files the disclosure of which *might* harm the individual." *United State Dep't of State v. Washington Post. Co.*, 456 U.S. 595, 599 (1982) (emphasis added).

As a result, the Court will determine whether disclosure of the requested name and address information withheld by Defendants with respect to those permittees in category 2a and 2b would constitute a "clearly unwarranted" invasion of those grazing permittees' privacy interests. To do so, as discussed above, the Court must balance the public interest in disclosure of the information with the privacy interests at stake.

---

[13] If there is a substantial probability that disclosure will cause an interference with personal privacy, "it matters not that there may be two or three links in the causal chain." *Home Builders*, 309 F.3d at 36, *quoting Horner,* 879 F.2d at 879,

## 2. Balancing test

Having determined that the names and addresses of the individuals and the addresses of the closely held entities and family owned businesses satisfy the threshold test, the Court will next consider whether the disclosure of this information would constitute a "clearly unwarranted" invasion of these permittees personal privacy. In conducting this inquiry, the Court will "balance the public interest in disclosure against the interest Congress intended the exemption to protect." *Dept of Def*. 510 U.S. at 493 *quoting U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 776 (1989). "Congress' primary purpose in enacting Exemption 6 was to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Dep't of State,* 456 U.S. at 599.

There are two guideposts applicable to this determination. First, the only relevant public interest is how disclosure would "contribute significantly to public understanding of the operations or activities of the government." *Dept of Def*. 510 U.S. at 495. Public interest is substantial when the information in the records "sheds light on an agency's performance of its statutory duties." *Id.* at 495-6. In other words, information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct is not the type of information to which FOIA permits access. Second, in balancing the public and private interests, the Court must not consider the motives of the party requesting the information. *Id.* at 494 ("[w]hether an

invasion of privacy is warranted cannot turn on the purposes for which the request for information is made.") The Court will address the privacy interest first.

### a. Privacy interest

The Supreme Court of the United States and the Court of Appeals for the Ninth Circuit have held that "some nontrivial privacy interest" is sufficient to justify the withholding of information under Exemption 6 unless the public interest in disclosure is sufficient to outweigh it. *Forest Service Employees for Envtl. Ethics v. United States Forest Service,* 524 F.3d 1021, 1027 (9th Cir. 2008) *quoting Dep't of Defense*, 510 U.S. at 501. Courts have recognized that individuals have a privacy interest in avoiding the unlimited disclosure of their names and addresses. *National Ass'n of Home Builders v. Norton*, 309 F.3d 26, 35 (D.C. Cir. 2003). Further, the Supreme Court of the United States has evinced a reluctance in the FOIA context "to disparage the privacy of the home which is accorded special consideration in our Constitution, laws, and traditions." *Dept. of Defense*, 510 U.S. at 501.

However, the Supreme Court also has recognized that the disclosure of names and addresses is not always a significant threat to the privacy of the individual on the list. *U.S. Dept of State v. Ray*, 502 U.S. 164, 177 n. 12 (1991). "Instead…whether disclosure of a list of names is a 'significant or *de minimis* threat depends upon the characteristics revealed by virtue of being on the particular list and the consequences likely to ensue.'" *Id. quoting National Ass'n of Retired Federal Employees v. Horner*, 879 F.2d 873, 877 (U.S. App. D.C. 1989) cert denied 494 U.S. 1079 (1991). The party seeking to invoke the

exception may not rely on "the speculative potential of a privacy invasion without any degree of likelihood." *Home Builders*, 309 F.3d at 385.

Based on the foregoing, the Court finds that the category 2b individual permittees generally have a non-trivial privacy interest in their names and home addresses.[14] However, the severity of the threat to the privacy interest as it relates to the balancing test depends upon the characteristics revealed by virtue of being on the particular list and the consequences likely to ensue. Here, Plaintiffs argue that the only characteristic revealed by being on the list is that each permittee is engaged in raising and grazing livestock on BLM managed land and that this information would not reveal any damaging, embarrassing, or specific financial information about the permittees. In support of this contention, Plaintiffs cite several cases where disclosure of names and addresses was not permitted based on the nature of the consequences associated with disclosure or the nature of the personal information at stake.[15]

Defendants admit that, if considered alone, the names and addresses of individual

---

[14] Because the privacy interest held by the individuals in category 2b in their names and home addresses is more significant than the privacy interest held by the closely held entities or category 2a permittees, the Court will balance this greater interest against the public interest.

[15] *Ray*, 502 U.S. at 164 (protecting disclosure of names that may lead to retaliation by government); *Reporters Comm'n for Freedom of the Press*, 489 U.S. at 749 (protecting disclosure of third party rap sheet); *Lahr v. National Transportation Safety Board*, 569 F.3d 964 (9th Cir. 2009) (protecting disclosure of eyewitness names associated with criminal investigation); *Forest Serv. Employees for Environmental Ethics v. U.S. Forest Service*. 524 F.3d 1021 (9th Cir. 2008) (protecting disclosure of employee names associate with investigative report to avoid harassment, embarrassment and stigma); *Painting Indus. Of Haw. Mkt. Recovery Fund v. Dep't of Air Force*, 26 F.3d 1479, 1483 (9th Cir. 1994) (protecting disclosure of names and precise payroll figures).

permittees reveal little more than the residence or location of each permittee. However, Defendants contend that this information, combined with other publicly available information including herd size and Animal Unit Months ("AUM"), directly or inferentially could result in unsolicited contacts or reveal at least a portion of the owner's or individual's personal finances. (Defendants Response p. 13-14, Docket No. 11-1.)[16] However, even if disclosure of this information could lead to discovery of general personal financial information regarding individuals, the Court finds the decision in *Multi Ag Media* regarding the strength of the privacy interest particularly instructive. In *Multi Ag Media*, the court ordered disclosure of information relating to irrigation practices, farm acreage, number and width of rows as well as photographs and maps of farms despite finding that this information could lead to discovery of personal financial information regarding the individuals owning the farms. When determining the strength of the privacy interest, the court held:

> ...telling the public how many crops are on how much land or letting the public look at photographs of farmland with accompanying data will in some cases allow for an inference to be drawn about the financial situation of an individual farmer. Because USDA has not made a showing of how often this may be the case, we are not persuaded that the privacy interest that may exist is particularly strong. Nevertheless our standard at this stage is not very demanding, so we are willing to engage in the balancing inquiry by concluding that disclosure of the information would constitute a 'more than minimal invasion [] of personal privacy.' 515 F.3d at

---

[16] The amount or size of the individual's assets is irrelevant to a determination of privacy interest. As noted in *Multi Media Ag*, "the disclosure of an individual's financial information is not less protected under Exemption 6 simply because his assets are significant." 515 F.3d at 1229.

1230.

The situation here is similar. Defendants have not demonstrated how or how often inferences might occur with respect to an individual's personal wealth, and how specific these inferences could be due to unknown variables and other factors regarding the correlation between size of herd and personal financial wealth. Further, the Court notes that similar "generic" information, including names and addresses, has been ordered to be released in other cases. For example, the court in *Washington Post* held:

> ...the nature of the list sought by plaintiff in this case does not create the same sort of personal privacy concerns or invite the kind of unwanted intrusions that would justify nondisclosure. The only individualized information that would be ascertainable from the release of the list is that a particular individual grows cotton, the addresses of the farm where the cotton is grown and where the subsidy is received, and how much of a subsidy that cotton farmer received in 1993. 943 F.Supp at 34.

Further, the court in *Washington Post* found, "precisely because the list is so large and the information is so generic that the individual privacy interests are so small." *Id. citing Kurzon v. Dep't of Health and Human Services*, 649 F.2d 65, 69 (1st Cir. 1981). The instant case is comparable. As noted by Plaintiffs, the "BLM is authorized to issue permits and leases allowing grazing on nearly 160 million acres of public lands, which it accomplishes by issuing nearly 18,000 permits." (Plaintiff's Opening Brief, p. 18, Docket No. 7-2.)

Based on the foregoing, the Court finds that any privacy interest the category 2b individual permittees have in their names and addresses is minimal. Further, the Court

finds that the closely held entities and family owned business permittees in category 2a have an even smaller privacy interest in disclosure of their addresses due to the speculative nature of the extent of the disclosures and the consequences of such a disclosure. However, the Court finds that, because both the category 2a and 2b permittees have more than a non-trivial privacy interest in the requested information, the Court should proceed to balance this minimal interest against the public interest in disclosure.[17]

### b. Public interest

When applying the balancing test, the only relevant public interest the Court is directed to consider is how disclosure would contribute significantly to "public understanding of the operations or activities of the government." *Dep't of Defense*, 510 U.S. at 495 *quoting Reporters Comm*. 489 U.S. at 775. Public interest is substantial if it "sheds light on an agency's performance of its statutory duties." *Id.* at 496.

---

[17] Plaintiffs contend that the privacy interest is trivial due to the BLM's previous disclosure of some of the same information to other groups. (Plaintiffs Opening Brief, Docket No. 7-2.) Specifically, Plaintiffs argue that information released in response to one FOIA request must be released to the public at large and therefore BLM cannot withhold the information from Plaintiffs. *Forest Service Employees for Envtl. Ethics,* 524 F.3d 1021.
Defendants contend that this argument essentially constitutes a waiver argument and has no merit. The Court agrees. Other courts generally have upheld the invocation of Exemption 6 even after the same information has been released to others. *See Sherman v. U.S. Dep't of the Army* 244 F.3d 357, 363-4 (5 th Cir. 2001) ("...only the individual whose informational interests are protected by exemption 6 can effect a waiver of those privacy interests when they are threatened by a FOIA request. For that reason, we do not accept [the plaintiffs] argument that [the government] has waived its authority to implement exemption 6.") *See also The Lakin Law Firm v. Federal Trade Comm'n*, 352 F.3d 1122, 1124 (7th Cir. 2003) ("the FTC cannot waive individuals consumers' privacy interests - whatever it does or fails to do.")

Plaintiffs contend that disclosure of the withheld information is necessary to more fully understand the scope of the BLM's grazing program. Specifically, Plaintiffs contend that, without the names and addresses of the category 2b permittees and the addresses of the category 2a permittees, it is not possible to know the identities of the persons who hold BLM issued grazing permits, how many grazing authorizations are held by each permittee, how may permittees are grazing on a particular allotment, and whether the BLM is complying with its regulatory requirements to manage public lands grazing and only issuing permits to "qualified applicants." (Salvo Decl. ¶ 5-8. 11, and 13, Docket No. 17-1.) Specifically, Plaintiffs contend that the "authorization number is an insufficient surrogate for the name and address of any permittee who has more than one authorization to graze public land" because, without the name and addresses of the permittees, "there is no way to determine how many grazing authorizations are associated with a particular permittee within or among multiple BLM field offices, districts or states." (Salvo Decl ¶ 8, Docket No. 17-1.)

Defendants disagree, arguing that the additional information would not shed light on the BLM's management of its grazing program any more than the information that is currently available to the public. Specifically, Defendants argue that an understanding of the true scope of the program could be accomplished by release of only the names of the permittees and that release of addresses would be of no additional value. In support of this contention, Defendants cite Chief District Judge Winmill's decision in *State of Idaho v. United States Forest Service,* CV98-230-S-BLW, Docket No. 20 (D. Idaho, Dec. 9.

1997).  In *State of Idaho*, the court ordered release of the name and city of residence of

each individual holding a permit, license, or lease on Forest Service lands in Idaho.  The

court found that "knowledge of the names will aid in determining whether improper

influence was used to obtain permits or whether permits are being granted to those with a

past history of environmental abuses." *Id*. at 6.  Further, the court held that disclosure of

names and cities of residence would be specific enough to prevent mistaken

identifications without the intrusiveness that would result from the release of the

addresses.  *Id.*   Although persuasive authority,[18] the Court finds *State of Idaho*

distinguishable from the situation currently before the Court, because the Plaintiffs have

demonstrated by specific example why addresses are necessary to differentiate between

permittees who have similar or almost identical names.[19]  (Salvo Decl. ¶ 20, Docket No.

17-1.)

---

[18] Chief District Judge Winmill's decision is not binding on the Court, however, in the absence of contrary law from a higher court, it establishes persuasive authority. *See Wilson v. Union Sec. Life Ins. Co.*, 250 F.Supp.2d 1260, 1262 (D. Idaho 2003) (explaining the binding authority principal and citing *Hart v. Massanari*, 266 F.3d 1155, 1174 (9th Cir. 2001)); *In re Estes*, 254 B.R. 261 (Bankr. D. Idaho 2000) ("In order to promote consistency and predictability, and faith in the rule of law, this Court should depart from its prior decisions, whether rendered by the same or another bankruptcy judge, only upon compelling circumstances.").

[19] Mr. Salvo provides the following example:

The RAS database lists three Category 1 permittees with similar names -"Brackett Ranches LTD," "Brackett Livestock," and "Brackett, CE Cattle Co" with authorizations to graze multiple allotments managed by the Jarbridge Field Office in the Twin Falls District, Idaho. See Exh. 11. The three permittees have only two addresses between them.  If not for disclosure of their street addresses it would be virtually impossible to determine if these names represented one, two or three separate permittees.... (Salvo Decl. ¶ 20, Docket No. 17-1.)

Defendants also contend that the public can determine the relationship between a permittee and multiple grazing authorizations from each permittees grazing application. However, this application form does not request the permittee to disclose the authorization numbers associated with the permittee. (Salvo Decl. ¶19, Docket No. 17-1; Cooley Decl. Exh. 5, Docket No. 11-4.) Therefore, the Court finds that the only way to determine the number of authorization numbers associated with each permittee is through release of the names and addresses of the permittees in categories 2a and 2b.

Further, Defendants argue the information requested by Plaintiffs and the conclusions the Plaintiffs seek to draw from the information would shed light on the operations of the permittee rather than on the operations of the BLM, because there are no restrictions on the number of grazing permits that any one applicant may hold, no limits on the number or the size of grazing applications, and no limits on the number of allotments that may be used by a given permittee at any point in time. (See Second Cooley Decl. ¶ 7, Docket No. 25-1.) Although the Court acknowledges that there are no restrictions on the number or size of grazing permits that each permittee may hold, the Court finds that there is a substantial public interest in understanding the scope of the grazing and rangeland program, particularly in light of the environmental impacts associated with grazing and the amount of tax dollars spent on the grazing program itself. Understanding the scope includes knowing how many individuals or entities actually graze cattle on public lands, as well as the size and scope of their operations. Because the only way to determine this information is from release and cross referencing of the

requested information, the Court finds that a substantial public interest exists.[20]

With respect to the "qualified applicants" issue, Plaintiffs contend that determining which authorization numbers are associated with each permittee is necessary for the public to be able to monitor and determine whether the BLM is complying with the requirement that an applicant have a "satisfactory record of performance" or has "substantial compliance with the terms and conditions of the existing Federal grazing permit or lease for which renewal is sought, and with the rules and regulations applicable to the permit or lease." 43 C.F.R. §4110.1(b). Plaintiffs contend, that without knowing the extent of a permittee's grazing authorizations, the public cannot cross reference the permittee with other public information concerning compliance with permit terms and conditions, including trespass notices, notices of unauthorized use, and other prohibited acts under 43 C.F.R. §4140 and §4150. Plaintiffs also argue that public interest in this information is very high due to the documented environmental impacts of grazing and the amount of tax dollars spent to manage private livestock grazing each year. (Salvo Decl., Docket No. 17-1.) Further, Plaintiffs contend that this interest is evidenced by the numerous reports and news articles produced on the subject several of which are attached as exhibits to Mr. Salvo's declaration. (Salvo Decl., Docket No. 17-1.)

Defendants respond that Plaintiffs' allegations that the BLM may not be

---

[20] Defendants argued that the permitting process for one region may not consider whether the applicant is in compliance with regulations in a different region. However, without the requested information, the public has incomplete information regarding the agency's action in approving the applications and therefore cannot reasonably determine whether to challenge or accept that process.

complying with its duty to give permits to only "qualified applicants" do not rise to the level of a cognizable public interest because Plaintiffs have offered no evidence of impropriety. *See Favish*, 541 U.S. at 174. However, Plaintiffs have identified evidence that, with a permittee's name and address the Plaintiffs and the public can determine if the permittee has grazing permits on other allotments that have been classified as being ecologically damaged. (Salvo Decl. ¶ 11-12, Docket No. 17-1.) The Court finds this situation similar to that in *State of Idaho* where the court found a legitimate public interest in "knowing whether permits are being granted to those with a past history of environmental abuses." *State of Idaho*, CV 97-230-BLW at 6.

Based on the foregoing, the Court finds that providing the requested information would allow the public to better understand the scope of the BLM's grazing program. Therefore, the Court finds that the public interest in disclosing the requested names and addresses of individuals as well as the addresses of the closely held entities and family owned businesses is substantial.

### c. Balancing privacy interest with substantial public interest

Given the Defendants' insufficient showing that release of the addresses of category 2a permittees and the names and addresses of category 2b permittees would allow the public to draw inferences about some of the grazing permittees' financial circumstances, and considering the presumption in favor of disclosure, the Court finds the public interest in monitoring the BLM's rangeland program outweighs the minimal privacy interests held by both the category 2a and 2b permittees. Therefore, the Court

concludes that disclosure of the names and addresses of the individual permittees (category 2b) as well as addresses of the closely held entities or family owned businesses (category 2a) would not constitute a clearly unwarranted invasion of personal privacy, and that the Defendants reliance on Exemption 6 for withholding the information is not justified. Plaintiff's Motion for Summary Judgment on their Freedom of Information Act Claim will be granted.

### ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Plaintiffs' Motion for Summary Judgment on the Freedom of Information Act Claim (Docket No. 7) is GRANTED.

2) Defendants' Motion for Summary Judgment (Docket No. 11) is DENIED.

DATED: September 13, 2010

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge